IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 09-cr-0240-PWG** |
| **SALAH BENSON** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Salah Murad Benson's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 78, 81.[1] Mr. Benson is currently incarcerated at Morgantown FCI in Morgantown, WV where he is serving a 180-month sentence for possession with intent to distribute over 1 kg of cocaine, in violation of 21 U.S.C. § 841(a), and possession of a firearm in conjunction with a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Judgment, ECF No. 56. Mr. Benson has been incarcerated in connection with this case since April 8, 2009, Def.'s Mot. Mem. 15; he was sentenced April 5, 2010, *id*. at 2. In his motion, he requests that the Court release him in light of the global pandemic and its potential impact on him due to his health conditions. The Government opposes Mr. Benson's motion for the reasons explained below. During the week of November 30th, after Mr. Benson filed his motion, he tested positive for COVID-19 and entered quarantine on December 2nd. Correspondence, ECF No. 91. I have reviewed all the materials[2] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Mr. Benson's motion is GRANTED IN PART. I will order Mr. Benson released, but impose an additional

---

[1] Mr. Benson also filed a pro se motion requesting a Judicial Recommendation for 12 Months RRC Placement, ECF No. 73, which will be denied as moot because it is duplicative of his subsequent motion for compassionate release.

[2] The motion is fully briefed. *See* ECF Nos. 78, 86, and 88.

condition of his supervised release to require twelve months of home confinement, with location monitoring, as directed by the probation officer. Mr. Benson will be released once he has completed a 14-day quarantine that concludes with a negative test for COVID-19, and once the United States Probation Office (USPO) completes an evaluation of the home where Mr. Benson will serve his home detention.

## BACKGROUND

On February 2, 2010, Mr. Benson entered a guilty plea before Judge Alexander Williams to possession with intent to distribute over 1 kg of cocaine, and possession of a firearm in conjunction with a drug trafficking offense. On April 5, 2010, Judge Williams sentenced Mr. Benson to 120 months on the drug conviction and a consecutive 60 months on the firearm charge. Mr. Benson began serving his sentence on April 8, 2009. Def.'s Mot. Mem. 2. The Bureau of Prisons ("BOP") projects that Mr. Benson will be released on February 28, 2022.

As stated in his motion, Mr. Benson, who is 48 years old, suffers from hypertension and hyperlipidemia, and also has a body-mass index ("BMI") above 25 and is prediabetic. Def.'s Mot. Mem. 1, 6. Hypertension is a comorbidity that increases the risk of severe illness should someone who has it contract COVID-19. *E.g.* https://www.covid19treatmentguidelines.nih.gov/overview/ (last visited November 25, 2020). Mr. Benson also submits that being medically overweight and prediabetic could cause him to suffer more severe illness from COVID-19.

In opposition, the Government noted that Morgantown FCI "has been relatively unscathed by COVID-19." Gov. Resp. 4. Perhaps, but not so for Mr. Benson. And while the Government's statement was accurate at the time of filing—noting no active inmate infections and just 16 since the start of the pandemic—Morgantown now reports 73 active cases. *See* BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Dec. 4, 2020).

Defense counsel notes that the inmate population at Morgantown is 469, which means that currently, over 15% of the inmate population is COVID-positive. Def.'s Reply 7. Despite the well-intentioned efforts BOP has undertaken to stop the virus' spread, they are clearly insufficient.

The Government's opposition also points to the underlying conduct in this case: the firearm that officers recovered had an obliterated serial number; and Mr. Benson possessed a bulletproof vest, nearly $19,000 in cash at his residence, and "additional amounts of heroin, crack cocaine, PCP, and marijuana." Gov. Resp. 1.

**DISCUSSION**

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, [Name] requests a modification of [his/her/their] sentence for "compassionate release" under the First Step Act, as amended.[3] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing

---

[3] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant.

Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.*

## I. Administrative Exhaustion

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied because Mr. Benson has made the requisite requests for compassionate release to the Warden at his facility. Def. Mot. 2.

## II. Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *United States v. McCoy*, No. 20-6821, 2020 WL 7050097, *7 (4th Cir. Dec. 2, 2020). More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at *9 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020).

4

However, while not binding, *id.*, the Sentencing Commission's policy statements may provide useful guidance.

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here.[4] Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No.: 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this court and others and the application of multiple conditions). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

Here, the Government argues Mr. Benson has failed to prove extraordinary and compelling circumstances because his medical conditions are not "unusual or exceptional." Gov. Resp. 17.

---

[4] The Government, writing before the Fourth Circuit's opinion in *McCoy*, utilized the § 1B1.13 criteria to argue Mr. Benson does not present extraordinary and compelling reasons. Gov. Resp. 21. But as I have repeatedly held, and as the Fourth Circuit affirmed in *McCoy*, the § 1B1.13 categories are not binding in the compassionate release context. Specifically, the Government stresses the lack of BOP's determination that the Director of the BOP has not determined extraordinary and compelling reasons exist for Mr. Benson. As the Fourth Circuit emphatically stated, such a determination is not required. *McCoy*, 2020 WL 7050097, at *8.

Instead, the Government notes, Mr. Benson's health conditions put him into a category of people with preexisting conditions that the CDC observes *might* place him at a higher risk of severe illness should he contract the virus. *Id.* at 17–18. The Government also suggests Mr. Benson's weight would qualify him as not requiring any further body fat measurements if he were a soldier in the United States Army (which, of course, he is not). *Id.* at 18.

However, as Mr. Benson's motion states, data back up the assertion that hypertension increases the likelihood of a more severe COVID-19 case. Def. Mot. 6–7 (noting one study that concluded ICU patients were more than twice as likely to have hypertension). Hypertension alone has qualified as an extraordinary and compelling circumstance sufficient to justify compassionate release. *E.g. United States v. Benning*, No. 16-cr-0527-PWG, 2020 WL 7054823, at *2 (D. Md. Dec. 2, 2020). But there's more here: Contrary to all the Government's arguments why he is not at risk for contracting COVID 19, Mr. Benson is now positive for COVID-19. As Judge Chuang observed, being incarcerated during the pandemic increases the severity of a "sentence beyond what was originally intended." *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. April 28, 2020). Mr. Benson's serious medical condition, coupled with his COVID-19 infection, constitute extraordinary and compelling reasons warranting a sentence reduction.

These concerns are further considered in the analysis of the sentencing factors.

### III.    Sentencing Factors

A finding of "compelling and extraordinary reasons" is a necessary, not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the

sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

As defense counsel states, Mr. Benson entered a guilty plea after law enforcement recovered 1.7 kilos of cocaine and a firearm after searching his house. Def.'s Mot. 14. But counsel also points out that Mr. Benson did not engage in violence or a drug conspiracy in connection with this case. *Id.* Further, at sentencing, the Government sought, and the Court imposed, a sentencing enhancement that increased Mr. Benson's mandatory sentence from five to ten years on the drug count. *Id*. The basis for that enhancement was a 1992 drug distribution conviction. *Id*.

Defense counsel also stresses Mr. Benson's conduct while incarcerated: he was employed at a power plant for seven to eight months and engaged in significant educational and drug rehabilitation programming over his eleven and a half years of incarceration. *Id*. at 14–15. Importantly, Mr. Benson has not incurred a violent infraction despite being incarcerated for over a decade. Ex. 2 to Gov. Resp. (Disciplinary Records) (ECF No. 84-1). Mr. Benson also has a strong plan in place for after his release. Importantly, the Government concedes Mr. Benson "may not pose a significant danger to the community [if] released." Gov. Resp. 16.

Conversely, the Government emphasizes that recidivist conduct, exactly like that of Mr. Benson, is accompanied by significantly higher sentences to promote deterrence. Gov. Resp. 22. And Mr. Benson's conduct here, which involved a firearm and multiple controlled substances, was much more serious than his first offense.

As to the first factor, Mr. Benson's offense was certainly serious, but he has served over a decade in prison because of it—defense counsel calculated him to have served 77% of the sentence

7

when his motion was filed—and during that time, he has abstained from violent conduct and pursued rehabilitation.

As to the second through fourth factors, reducing Mr. Benson's sentence is consistent with the Sentencing Guidelines. He has served a significant portion of his sentence, part of which occurred during dire circumstances in the BOP and as to Mr. Benson himself, due to recently contracting COVID-19. And, if anything, the fact that Mr. Benson's sentence exposed him to COVID-19, which he has contracted, considerably enhances the deterrent effect of the sentence that he already has served. Further, defense counsel notes Mr. Benson's advisory guidelines sentence based on the Pre-Sentence Report topped out at 131 months, a sentence that would have resulted in his release by now. Instead, the Court imposed an enhanced sentence in this case. And regarding that enhancement, defense counsel further notes that in 2013, after Mr. Benson was sentenced, Attorney General Holder limited the use of 21 U.S.C. § 851 enhancements, rendering it inapplicable to cases such as Mr. Benson's. As the Court in *McCoy* noted, post-sentencing developments that would shorten a defendant's sentence if he were sentenced today are fairly considered. The potential shortening of Mr. Benson's sentence under subsequent guidance from DOJ is not nearly the same reduction in duration that the court considered in *McCoy*, but absent the enhancement, Mr. Benson's sentence on the drug charge would likely be reduced from ten years to five.

Considering all of the circumstances, I find that granting release at this time would be consistent with the sentencing factors set forth in § 3553(a)—Mr. Benson will continue to be confined for an additional period of 12 months, albeit under home detention as a condition of supervised release, thus reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. § 3553(a)(2)(A). The sentence also promotes deterrence: Mr.

Benson has served most of his sentence while in the BOP, which underscores the severity of his conduct. § 3553(a)(2)(A). Finally, home confinement as a condition of supervised release will protect the public.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Benson faces based on his medical conditions and location. I find that he has exhausted his administrative remedies, shown extraordinary and compelling reasons for a sentence modification, and demonstrated that the applicable sentencing factors justify such a modification. Therefore, Mr. Benson's motion for compassionate release is granted in part.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 9th day of December 2020, hereby ORDERED that Mr. Benson's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 78 is GRANTED IN PART and DENIED IN PART. Mr. Benson shall be released upon completing a 14-day quarantine concluding with a negative COVID-19 test and USPO's approval of the home where he shall be placed on home confinement for twelve months as a condition of supervised release.

/S/
Paul W. Grimm
United States District Judge